## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

SEBASTIANO PATANE,

                Pro Se Plaintiff,

v.

BABSON COLLEGE,
MARK POTTER, Individually and in his
official capacity as Associate Dean of the
Graduate School at Babson College;
MICHEAL CUMMINGS, Individually and in
his official capacity as Professor in the Blended
Learning Program at Babson College;
JESSICA HOSE, Individually and in her official
capacity as Associate Director of Part Time
MBA Program at Babson College,

                Defendants.

**Civil Action No.**

FILED
IN CLERKS OFFICE
2020 AUG 25 PM 3: 31
U.S. DISTRICT COURT
DISTRICT OF MASS.

## INTRODUCTION

1. This is a verified complaint for monetary damages and injunctive relief filed by Sebastiano Patane, Pro Se, against the Defendant Babson College and certain administrators and faculty members, for federal and state civil rights violations and other causes of action due to the Defendants' arbitrary, unfair, wrongful, and unlawful decision to dismiss the Plaintiff from the Graduate Program at Babson College in May 2017.

2. Plaintiff is a former Babson College graduate student candidate for the Master of Business Administration Blended Learning Program at Babson College's F.W. Olin Graduate School of Business class 2017.

3. Plaintiff began attending the program on October 27, 2015, along with the team to which he was assigned, and with which he worked until the spring semester 2016.

4. Throughout the period of his collaboration with his team, Plaintiff was persistently, and in

1

several forms, victim of his teammates hostile and discriminatory and harassing behavior which the Plaintiff perceived as being caused by his teammates' prejudice against his nationality and ethnic background.

5.  Plaintiff's teammates, in fact, often resorted to stereotypes surrounding the Plaintiff's cultural background to create a persuasive narrative to substantiate their complaints against their alleged Plaintiff's behavior every time issues arose.

6.  Plaintiff's teammates harassing behavior was pervasive. For example, during the group discussion it was a recurrent habit for the Plaintiff's teammates, to silence or to cut him off while expressing his thoughts taking advantage of occasional Plaintiff's hesitations caused by his language barriers and by his teammates' excessive and unjustifiable pressure.

7.  Also, Plaintiff's teammates repeatedly excluded Plaintiff's contribution to team projects, assignments, and from in class activities.

8.  Despite the Plaintiff constant effort to overturn the team internal conflictual relationship, Plaintiff's teammates promptly nullified all Plaintiff's attempts.

9.  Plaintiff's team conflicts and the incidents always occurred when his teammates feared failing an assignment or a project due to their struggle with the course material. Notably Plaintiff's teammates always attributed the causes of either conflicts or incidents to the Plaintiff.

10. Plaintiff was clearly used by his teammates as scapegoat to cover up their struggle with the course material and to justify team eventual lack of academic performance.

11. Plaintiff exposure to his teammates' behavior caused the Plaintiff to suffer emotional distress to a point that the Plaintiff began to experience a progressive withdrawal from the online activities and disengagement from some individual assignments.

2

12. Plaintiff sought help from Babson College through Professor Bonnevie multiple times, but Professor Bonnevie assistance ultimately turned out to be ineffective and insufficient.

13. Plaintiff requested Professor Bonnevie to be assigned to another team, and also expressed his intention to escalate his concerns to the Dean. Professor Bonnevie did not consider Plaintiff's request and strongly discouraged the Plaintiff to pursue the escalation.

14. Plaintiff continued to work hard certain that Babson college would have applied its internal policies and would have taken proper actions to protect the Plaintiff from his teammates' behavior.

15. Instead, as it is evidenced in the massive correspondence exchanged via email between Babson Faculty Members and Program Administrators, Faculty Members and Program Administrators were focused exclusively on looking for reasons to expel the Plaintiff from school, even by creating new policies that would have caused the Plaintiff to infringe rules and to be sanctioned based on the administrators expected Plaintiff behavior.

16. As of May 4, 2016, Plaintiff cumulative GPA was 3.25.

17. On May 5, 2016, Plaintiff was unjustly failed by Professor Cummings for reasons that transcended any plausible criteria of academic evaluation.

18. Babson Faculty Administrators were aware of Professor Cummings' ill will and wrongdoing against the Plaintiff, but did not prevent, neither acted to refrain, nor to forbid Professor Cummings to perpetrate his hate against the Plaintiff through academic and procedural means.

19. Plaintiff disputed the failing grade received by Professor Cummings by following the proper process, but Faculty Administrators negligently overlooked Plaintiff's arguments and made Professor Cummings decision prevail.

3

20. Following the Plaintiff grade dispute, Plaintiff became victim of retaliating actions and hostility on behalf of the administration and faculty members.

21. Due to the burden of adversity that the Plaintiff had accumulated at Babson College and the deliberate Babson Faculty Directors and Program administrators' decision to negate the Plaintiff the help he had requested, Plaintiff experienced an unprecedent feeling of disempowerment, which caused him severe emotional distress that subsequently affected his health status already compromised by the Plaintiff's pre-existing medical condition.

22. For this reason Plaintiff sought assistance through the Student Learning Center which upon assessment of the Plaintiff's case granted the Plaintiff limited academic accommodations.

23. In January following previous probation letters received from Academic Standard Committees as a consequence of the Plaintiff decreased cumulative GPA, Plaintiff received a dismissal letter from Ms. Hose communicating to the Plaintiff that he was being expelled from school.

24. Plaintiff, in good faith, and in compliance with the recommendations received by Ms. Hose, did not open a dispute arguing against the Academic Standard Committee decision, he just responded to the letter with a request for readmission which mainly contained the scope of persuading the Academic Standard Committee that he was worthy of being granted the opportunity to remain in the Program.

25. Subsequently Plaintiff received a letter from Dean Lamb informing him of his reinstatement. With that letter Dean Lamb also informed the Plaintiff that he would have remained under probation and that he was subjected to specific conditions indispensable to make academic advancement. Dean Lamb clearly increased the burden of academic requirements on the Plaintiff.

4

26. Despite the fact that accommodations granted to the Plaintiff were documented, in the Spring Semester of 2017 some faculty members interfered with the Plaintiff enjoyment of the academic accommodation prescribed by the Student Learning Center.

27. On May 18, 2017, Plaintiff was unjustly dismissed from school without any consideration of the extenuating circumstances to which the Plaintiff had been subject throughout his attendance and prior to exhausting all possible remedies as indicated in the Graduate Student Handbook, such as "Incomplete" grades or "emergency interim medical withdrawn initiated by the college".

28. It is a matter of fact that Defendants' effort to obstruct and to expel the Plaintiff from the Program was unequivocally greater than the effort to retain him.

29. Defendant Babson College's discriminatory and retaliatory treatment of the Plaintiff has impaired his ability to obtain his MBA as well as to take advantage of several opportunities offered within the Babson College Program to enhance his experiential background and to advance his career.

30. Plaintiff has suffered substantial damages as a direct and proximate result of Babson College's actions, including reputational harm, emotional distress, delayed or lost career opportunities, lost earnings potential, and other consequential damages.

31. All the Defendants had a relevant role in preventing the Plaintiff's completion of the MBA Program.

## JURISDICTION AND VENUE

32. This action arises under Plaintiff's constitutional rights Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983, 42 U.S.C. § 1985 (3), 42 U.S.C. § 1986, Title VI Civil Rights Act of 1964 [42 U.S.C. § 2000d et seq], ADA. 42 U.S.C. §12203(b),

5

as well as for breach of contract and tort law.

33.   This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367

34.   Venue is proper in this district under 28 U.S.C. § 1391(b).


## PARTIES

35.   Plaintiff Sebastiano Patane was at all times material to this complaint a student attending
      the Defendant Babson College. He currently resides in Norwood, Massachusetts.

36.   Defendant BABSON COLLEGE is a private co-educational college in Babson Park,
      Norfolk County, Massachusetts.

37.   Defendant MARK POTTER is, and was at all times relevant herein, Associate Dean of the
      Graduate School at Babson College, he is being sued in his individual capacity.

38.   Defendant MICHEAL CUMMINGS is, and was at all times relevant herein, Professor in
      the Blended Learning Program at Babson College, he is being sued in his individual
      capacity.


## STATEMENT OF FACTS

ADDITIONAL PLAINTIFF BACKGROUND INFORMATION

39.   Plaintiff is a first-generation immigrant from Sicily, who relocated to the USA about six
      years prior to his enrollment at Babson College.

40.   Plaintiff, in his country of origin, had a successful career in business as an entrepreneur and
      as a corporate manager.

41.   Plaintiff has several years of team building, teamwork and coaching experience.

42. For a few years after his relocation, Plaintiff struggled to find regular occupation that was at the level of the career he had achieved in his country of origin.

43. In 2011 the Plaintiff enrolled at UMASS Boston where he pursued his Bachelors' Degree of Science with a double concentration in International Management and Finance and graduated in December 2014 with 3.00 GPA.

44. In 2012 Plaintiff developed and was diagnosed with chronic kidney disease. In 2013 Plaintiff began hemodialysis treatment.

45. In September 2015 Plaintiff enrolled in the part-time MBA program at Babson College. Plaintiff sought personal and professional improvement through his academic achievements and network expansion at a professional level despite his disability status.

46. Plaintiff's investment in education from Babson College represented, and still represents, a financial burden for which Plaintiff and his wife had to make sacrifices and are still carrying as a financial loss.

47. In the summer of 2017 Plaintiff received a kidney transplant.

BABSON COLLEGE COMMUNITY STANDARDS AND POLICIES - (Babson College Graduate Student Handbook 2015-16)

48. "Babson College prohibits discrimination on the basis of race, color, national or ethnic origin, ancestry, religion, sex, sexual orientation, age, physical or mental disability, and veteran or other protected status. This policy extends to all rights, privileges, programs, and activities, including admission, employment, education, and athletics. In addition, Babson College respects, values, and benefits from diversity in the College community. The College, through the president, vice presidents, and deans, requests that all members of the community support efforts

7

that reinforce the value of diversity throughout the curriculum"

BULLYING - (Babson College Graduate Student Handbook 2015-16)

49.     Repeated and/or severe aggressive behavior likely to intimidate or intentionally

        hurt, control or diminish another person, physically or mentally (that is not speech

        or conduct otherwise protected by the 1st Amendment).

BABSON COLLEGE STATEMENT OF VALUES - (Babson College Graduate Student
Handbook 2015-16)

50.     "Integrity and respect for the community, both in and out of the classroom,

        are recognized by Babson College as core values. Flowing from these core

        values, the College has defined a set of expectations for all of its members.

        The College expects all students and student groups will do their utmost to

        embrace Babson's core values and subsequent expectations. In doing so,

        students and student groups will contribute to the development of Babson

        as a positive living and learning community."

PARTICIPATION IN ACADEMIC DISONESTLY ACTIVITIES - (Babson College Graduate
Student Handbook 2015-16)

51.     "Intentionally or knowingly seeking to create an unfair advantage for a student,

        oneself, or others over other community members.

        *Examples of Academically Dishonest Activities*

        -   Stealing an examination or seeking access prior to its administration.

        -   Purchasing or otherwise obtaining a pre-written paper through mail-order,

            internet or similar service.

- Selling, loaning, or otherwise distributing materials for the purpose of cheating, plagiarizing, or carrying out other academically dishonest acts.

- Alteration, theft, forgery, and/or destruction of the academic work of other students, library materials, laboratory materials, or academic records, including transcripts, course registration, course syllabi, and examination, course grades.

- Intentionally missing an exam or assignment deadline to gain an unfair advantage.

- Misrepresenting or falsifying your class attendance or participation in required activities or that of another student.

- Intentional misrepresentation of academic information—including grade Point average (GPA), coursework, rank, grades earned, and honors received—on a résumé or job application."

SATISFACTORY ACADEMIC PROGRESS - (Babson College Graduate Student Handbook 2015-16)

52.    "Students can view their grades online on the Babson Hub. After each semester and module, the Academic Standards Committee (ASC) reviews the standing of all students whose cumulative GPA is below 2.80, or who receive a failing grade or an incomplete grade in a course. The ASC may in its discretion dismiss or issue a warning to any student in these cases. Students have the right to appeal the dismissal decision of the ASC, and will be given notice before the decision of dismissal is made. The ASC also may mandate that the student take more course work during the elective portion of the program to prove proficiency in the areas

where the faculty has determined the student has not mastered the core skills. The committee will determine the criteria and conditions for continued study in all instances and communicate these in writing to the student."

FAILING GRADES - (Babson College Graduate Student Handbook 2015-16)

53.     "Student must earn passing grades in all required courses. If a grade of "F" is earned in a    required course, that course must be repeated. If a grade of "F" is earned in an elective course, the student must either repeat the course or successfully pass another elective. In any case where a student receives an "F," the original "F" grade and any subsequent passing grade are both factored into the student's cumulative GPA. The original "F" grade will show up on the student's transcript. A student who completes all course requirements with a GPA slightly below 2.80 will be permitted to take up to two additional courses to raise it. If the student fails to raise his or her GPA to 2.80, the degree will not be awarded. Students in the MSEL Program are allowed to take MBA elective courses (up to 6 credits) to raise their GPA with the approval of the Office of Graduate Programs. In all cases, students are responsible for the additional costs associated with taking these courses.

BABSON COLLEGE GRADING SYSTEM - (Babson College Graduate Student Handbook 2015-16)

42.     A   4.00      A–  3.67      B+  3.33

        B   3.00      B–  2.67      C+  2.33

        C   2.00      C–  1.67      F    0.00

MBA BLENDED LEARNING PROGRAM 2015-2017

54.   Babson's Blended Learning MBA combines real-time online classes, face-to-face, and

virtual collaboration with peers and professors. The Master of Business Administration is

awarded to the students who have earned 46 credits with cumulative 2.8 GPA. As it is stated

in the 2015/16 and in the edition 2016/17 of the Graduate Student Handbook, students

whose GPA is slightly under 2.8 GPA can be allowed to take additional classes to raise his

GPA to 2.8.

PLAINTIFF'S TEAMMATES DISCRIMINATION AGAINST AND HARRASSMENT OF
PLAINTIFF

*Plaintiff's teammates obstruction of Plaintiff participation to the program due to Plaintiff's
teammates Behavior*

*Fall semester 2015*

55.   The Program started on October 27, 2015, with an orientation event called "Startup

Foundations" during which the students were organized in learning groups/teams as per the

Program administration criteria.

56.   During the startup session the Plaintiff and his team, participated in the "TechMark", a

project challenge based on data modeling and analysis skills.

57.   Plaintiff was the only student in the team who graduated in management and had the

technical skills useful to provide the team with significant contribution.

58.   Plaintiff noticed that most of his teammates were struggling to find the correct approach to

work on the project therefore he attempted to guide the team through the assignment.

59.   One of the team members became impatient and interrupted the Plaintiff saying that the

team was wasting too much time discussing the method. Due to the student authoritarian

attitude, the Plaintiff stepped back without opposing to avoid possible escalations.

60. The same teammate along with another team member, continued to discourage the Plaintiff from making further interventions.

51. Ultimately, Plaintiff team scored the lowest among all teams in the program.

52. In so doing, Plaintiff 's teammates prevented the Plaintiff from fully participating in the startup event and to mark his debut in the Program with a failure.

*Plaintiff's teammates' dishonest academic activity, retaliatory actions against the Plaintiff, and misrepresentation of the Plaintiff's character*

*Fall semester 2015*

61. Along with other assignments, as part of the startup session, each team was expected to create "team charter".

62. On October 30, 2015, while the Plaintiff and his teammates were working on the team charter, they engaged in a conversation about each one's background, teamwork and career expectations.

63. During the conversation Plaintiff emphasized the importance for the components of "a team" of being open and complimented some of his teammates for being so. Plaintiff concluded his thought by saying to a general extent that "being open is good but being too open -in business- may be risky".

64. One of the Plaintiff's teammates took Plaintiff's affirmation negatively because he thought the comment was directed at him, but did not seek an explanation or clarification from the Plaintiff neither was the Plaintiff allowed to clarify due to a confusing intervention from other team members first, and secondly because the student suddenly became emotional and walked out of the meeting room.

65. On the same day, after the incident, the Plaintiff and his teammates were heard by Professor Bonnevie. During the meeting with Professor Bonnevie, some of the Plaintiff's teammates suddenly changed their opinion from saying that the student reaction was excessive and incomprehensible to justifying the student reaction and instead were affirming that it was the Plaintiff aggressive behavior that caused the situation.

66. On October 31, 2015, the team received an email from the team member who mistook the Plaintiff's comment and had walked out.  In the email he informed the team that he had decided to defer his enrollment.

67. On the same day, the Plaintiff replied to the former teammate's email, the Plaintiff tried to persuade the former teammate to return. The Plaintiff in his email informed the former teammate that the Plaintiff was willing to leave the team if that would have helped him to avoid postponing his enrollment.

68. The former teammate replied to the whole team that his decision to leave was based on personal matters and not related to any of the Plaintiff's or other teammates' actions or behavior.

69. On November 9, 2015, Plaintiff sent his assignment contribution concerning the course named "CLEO" to his team coordinator (this was weekly assigned role), but Plaintiff later found out that his contribution was omitted from the team assignment submission.

70. On November 10, 2015, Plaintiff reached out Professor Donnellon via email to inform her that his assignment contribution was missing because it was purposely omitted it.

71. Professor Donnellon replied to the Plaintiff and his team that she perceived that the team was experiencing some issues. Professor Donnellon also added that the team should not have omitted Plaintiff's work in the first instance and recognized the fact that Plaintiff

contribution would have added value to the team assignment.

72. On November 10, 2015, before the online team meeting one of the Plaintiff's teammates started a conversation via email concerning the Team Charter edits. Plaintiff had included in the chart the "request" to record the online meetings and supported his idea with adequate justification.

73. Plaintiff had edited the chart one week prior to the online meeting, but his teammates waited until the day of the meeting -the meeting was supposed to be focused on a different assignment- to express their concerns.

74. Plaintiff's teammates, for the second time, refused to hear the Plaintiff's perspective concerning the online meeting recordings and instead of seeking for mediation, they belittled and attacked him with several emails.

75. Plaintiff had demonstrated to be very accommodating with his teammates therefore he might have changed his mind if his teammates instead of belittling him would have had approached him with the attitude and consideration they had used with each other.

76. Plaintiff communicated to his teammates that due to their repeated behavior, the Plaintiff would not have participated in the meeting.

77. On November 10, 2015, Plaintiff was emotionally exhausted, he sought help from Babson College through Professor Bonnevie to whom the Plaintiff sent an email where the Plaintiff reported his teammates harassing behavior.

78. In the same email, Plaintiff also expressed his intention to bring the team issues to the attention of the Dean. In his reply, Professor Bonnevie discouraged the Plaintiff to involve the Dean to avoid the escalation of the team issues.

79. Plaintiff's teammates instead were strongly encouraged and assisted in escalating the team

issues and were also helped by Ms. McVey in their effort to misrepresenting the Plaintiff's character and to make him the cause of the team issues.

80.  As it is evidenced from an email sent on November 16, 2015, from Ms. McVey to Ms. Marroquin, Director of Graduate Programs, Dr. Mark Potter, Faculty Director, and to other Administrators that on November 13, 2015 she referred that she had entertained multiple conversations -via phone call, after working hours, and via email- with one of the Plaintiff's teammates about new team issues and especially about the Plaintiff.

81.  In her email Ms. McVey did not only mention the material facts strictly related to the results of the Plaintiff's behavior but she made an effort in providing a description of the Plaintiff's character in the absence of her direct experience or evidences. In the same email, Ms. McVey also made an effort to demonstrate that the permanence of the Plaintiff in the team or in the Program represent a disadvantage for Babson College interest.

82.  As it is evidenced in an email sent on November 20, 2015, from Ms. Hose to Dr. Potter, regarding a meeting Ms. Hose had with Professor Marcinowski, where Ms. Hose related that Professor Marcinowski reference that the Plaintiff was struggling in his class, that he was less active than his peers and that he did not fit well academically in the Program. Professor Marcinowski was aware of the Plaintiff's team issues.

83.  On Friday December 4, 2015, Plaintiff and his team met on campus for the face-to-face session concerning Professor's Marcinowski and Professor's Donnellon courses. On that occasion the Plaintiff and his team met with Professor Marcinowski to discuss some of the team members' concerns with the in-class presentation since the team had struggled to make progress.

84.  Plaintiff's contribution to the team project presentation was conspicuous however the

Plaintiff was excluded by his teammates from presenting the project in front of the class. Professor Marcinowski did not inquire as to why the Plaintiff did not participate in the Presentation.

85. On the same day during a team meeting, Plaintiff's teammates tried to persuade the Plaintiff that he was not fit for the program.

86. On December 15, 2015, Plaintiff received correspondence from Professor Marcinowski regarding his missed board participation. Plaintiff mentioned to the Professor that his participation was compromised by a worsening of his health condition.

87. Professor Marcinowski did not make any effort to inform, or to suggest to the Plaintiff to seek out the Student Learning Center for assistance.

88. On December 16, 2015, Professor Marcinowski sent correspondence to Professor Potter and Ms. Hose, communicating that the Plaintiff had missed a significant number of assignments and that he was still struggling in his class.

89. Professor Marcinowki disregarded the possibility of a correlation between the Plaintiff's disengagement from the course activities and the Plaintiff's victimization on behalf of the Plaintiff's teammates, instead he prejudicially attributed the Plaintiff's decreasing performance entirely on the Plaintiff by simply inferring that he was academically inadequate to the program.

90. Professor Marcinowski reached out to the Plaintiff to check his status four days before the end of the course but a few weeks after Professor Marcinowski had already reported his concerns regarding the Plaintiff to the Program Director. Professor Marcinowski offer of assistance to the Plaintiff, at that point, was useless especially after Professor Marcinowski had already compromised the Plaintiff's academic reputation.

*Spring semester 2016*

91. In the second part of the Spring semester 2016 Plaintiff and Plaintiff teammates attended two new courses: "Strategy", taught by Professor Cummings, and "Data, Models and Decisions" taught by Professor Kopcso.

92. During the fourth week of April 2016, Plaintiff was responsible for coordinating the team study plan and activities including a presentation assignment in the Strategy course.

93. Plaintiff's teammates deliberately decided not to collaborate in the team project as per the guidance provided by the Plaintiff.

94. On April 19, 2016, Plaintiff contacted Professor Cummings asking for clarification on the assignments and to inform him that the Plaintiff's teammates were having problem with the extensive class material.

95. Plaintiff sent evidence to Professor Cummings concerning his teammates hostility and dismissal of any of the Plaintiff's proposals and attempt to accommodate his teammates needs.

96. On April 22, 2016, on occasion of the Strategy and the Data Modeling courses face to face session at Babson College Campus in Wellesley, MA, Plaintiff was the victim of an ambush meeting orchestrated by his teammates during the lunch break, right before the Strategy lecture when Plaintiff and part of his team were alone in the classroom.

97. During the meeting Plaintiff was verbally assaulted by one of his female teammates blaming Plaintiff for the group's late progress and telling Plaintiff he, "Could not speak!". At the same time as the Plaintiff attempted to respond, another team member threatened the Plaintiff yelling at his face "Stop speaking or I will say that you are being aggressive to the girls!"

98. Plaintiff understood the teammates intention and walked out of the classroom.

99. Meanwhile the same teammate who threatened the Plaintiff ran to the Admission Office. Admission Office Administrators called the Campus Security Officer to intervene.

100. The Plaintiff was interrogated by the Campus Police Officers. He was asked to return in class and not to interact with the students.

101. When Plaintiff returned in class one of his teammates said out loud to another teammate "someone is gonna miss the walk this summer".

102. Due to the accident, Plaintiff's teammates were excused by Professor Cummings from performing the Strategy project in-class presentation.

103. After the incident, Plaintiff submitted his request to obtain a copy of the Security Officer report of the incident twice, but the report has never been provided to him.

104. On April 25, 2016, following the Plaintiff's teammates defamatory actions against the Plaintiff, the Class Representative reached out to Professor Mark Potter informing him that the students in the section were worried about the possibility of working with the Plaintiff due to the fact that his teammates had spread the word of the incident that occurred on April 22, 2016, and that it had involved a physical altercation between the Plaintiff and another student. Plaintiff was not involved in any physical altercation.

PROFESSOR CUMMINGS

105. On April 22, 2016 Plaintiff sought help from Professor Bonnevie regarding the incident that occurred the same day before the Strategy course lecture.

106. On April 22, 2016 at the end of lecture, Plaintiff went to Professor Cummings and asked his availability for a meeting to discuss the team issues, but Professor Cummings denied the

18

Plaintiff request saying that he had to meet with other students.

107. On Friday April 22, 2016 late evening Plaintiff wrote to Professor Cummings providing him with the Plaintiff version of the fact regarding the incident in the same day. Plaintiff also asked about the possibility to work alone in the final exam.

108. Meanwhile Plaintiff informed Professor Cummings that the Plaintiff was writing to him from an Emergency Room of a Hospital in Boston where he brought his wife therefore that he might have to miss Saturday's class. Professor Cummings ignored Plaintiff email.

109. On April 23, 2016, despite fact that on that night Plaintiff's wife was admitted to the Hospital and the Plaintiff returned home early in the morning, Plaintiff attended Saturday's Classes including Strategy.

110. On April 26, 2016, Professor Potter reached out to Professor Cummings and Professor Kopcso asking to work on some solution that would have allowed the Plaintiff and his team to complete the coursework. Professor Cummings replied: "Mark I can develop a work around for strategy. This guy is a cancer." Among the email recipients Professor Potter had added the Associate Dean Langowitz and other Program Administrators.

111. Following Professor Potter email, Professor Langowitz replied recommending to avoid sending messages concerning the characterization of the students. Professor Cummings replied to Professor Langowitz email adding more attributes to the Plaintiff mischaracterization "[…] This guy is a snake. He is the kind of student that ruins the experience for the section and discredits the program".

112. On April 26, 2016 Professor Cummings reached out to the Plaintiff asking the Plaintiff to complete the coursework alone as well as to work alone on the final exam, and under

additional conditions.

113. Professor Cummings also requested the Plaintiff to acknowledge to him that the Plaintiff

had understood his directions. Plaintiff, in good faith, accepted Professor Cummings'

agreement's conditions trusting that Professor Cummings would have adapted his grading

policies to that exceptional circumstance.

*Prof. Cummings Request for Stipulation of agreement for Strategy course completion.*

114. On April 26, 2016, Plaintiff received the following correspondence from Professor

Cummings concerning the completion of the coursework and the instructions for the

final exam:

> "Mr. Patane:
>
> Please work alone for the next two weeks. You will not be held
> responsible for any group posts in week 6. You are however as always
> responsible for your individual posts. Please complete the final exam
> according to the exam instructions including the timing of submission.
> Please acknowledge that you understand my directions. Professor
> Cummings".

115. Plaintiff accepted.

116. Plaintiff expected Professor Cummings to credit his personal work and his

contribution to the team assignments performed in the previous five weeks from the

incident on April 22, 2016.

117. Prior the exam and during the grade dispute, Plaintiff had requested several times to

Professor Cummings the opportunity to do extra work to compensate or to exceed

his performance in the course since his participation had been compromised by his

teammates' obstruction to perform in the course at his highest capabilities.

118. Professor Cummings denied Plaintiff's requests to be heard.

119. When Professor Cummings structured the agreement concerning Plaintiff's Strategy
course completion and the exam policies, Professor Cummings knew already that his
own evaluation of the Plaintiff's participation would have been an "insufficience",
since he knew that the Plaintiff, after the face to face session, would not have had
other opportunities to increase his participation.

120. Ultimately, Professor Cummings knew already that due to his own agreement terms,
in order for the Plaintiff just to pass the class with just the minimum grade, the
Plaintiff must had scored an A letter grade in the final exam.

121. The Strategy final exam consisted in a business case analysis team paper.

122. Plaintiff learned about the grading criteria applied from Professor Cummings only
after he received the Failing grade and he had disputed it due to the fact that he used
different, but penalizing, evaluation criteria than those listed in his course syllabus.

123. Plaintiff worked toward the completion as well as on the final exams alone in both courses
unlike his teammates who worked together.

*Strategy Course grade dispute – Professor Cummings application of nonacademic
evaluation standards and conspiracy against Plaintiff's right.*

124. On May 5, 2016 Professor Cummings and Professor Potter exchanged the
following correspondence:

Professor Cummings wrote to Professor Potter and Ms Hose:

"Just an FYI, I gave him an F. He had only 2 posting (10 substantive posts

are the minimum required for a B plus class engagement which was clearly articulated to them during the open webex). In addition he not only did not engage in class discussion he spent most of his time reading the computer (not the case…he had the stare that indicates that he was reading something else). Finally, his final paper was a B. I had a second experience professor who teaches both strategy and teaches in the blended learning grade the paper as a second reference point."

Professor Potter replied:

"Thanks for this information and your extra attention – it seems like he will (hopefully) get the grade he 'earned'."

125. On May 6, 2016, Plaintiff finds out that Professor Cummings failed the Plaintiff in his course. The same day the Plaintiff disputed the grade.

126. On May 6, 2016 Plaintiff contacted Professor Cummings via email seeking an explanation concerning the criteria used by Professor Cummings in evaluating the Plaintiff.

127. Professor Cummings replied to the Plaintiff saying that he was failed due to his weak participation on the discussion board and during the face to face session.

128. Professor Cummings' grading policies concerning the student participation indicated that the participation grade was cumulative and based on the sum of more requirements.

129. Plaintiff reminded Professor Cummings that he was aware of the issues that the Plaintiff had experienced with the team and that they should have been taken into consideration.

130. Plaintiff asked Professor Cummings to consider changing the grade from an F to an Incomplete since the Plaintiff performance was not academically weak per se, but it was weakened by the Plaintiff's teammates' obstruction and academically dishonest actions.

131. Professor Cummings ignored Plaintiff's arguments and invited him to escalate the dispute.

132. As per the Grade Dispute Procedure, on May 5, 2016, Plaintiff brought the dispute the

Chair Department Professor Rollag.

133. Plaintiff complained about Professor Cummings' unfair decision to fail the Plaintiff due to the extenuating situation in which he had worked throughout the course caused by his teammates.

134. On May 23, 2016, Plaintiff received correspondence from Professor Rollag, saying that he did not find any reason for changing the grade. Professor Rollag provided the Plaintiff with misleading information.

135. On May 24, 2016, Plaintiff extended Plaintiff grade dispute to the Associate Dean Langowitz.

136. Plaintiff spent a great deal of time and effort to demonstrate that Professor Cummings evaluation was strongly biased and not based exclusively on academic factors.

137. In his complaint, Plaintiff also mentioned Professor Cummings' hostile attitude toward the Plaintiff. The grade dispute process ended on May 26, 2016.

138. Dr. Langowitz did not make an adequate effort to correct Professor Cummings biased judgment especially since she was aware of the fact of Professor Cummings personal reluctance toward the Plaintiff and the fact that he was unable to prevent his academic evaluation from being permeated by his personal aversion against the Plaintiff.

## DEFENDANT'S UNWARRENTED ATTEMPTS TO DISMISS THE PLAINTIFF FROM THE MBA PROGRAM AND VIOLATION OF TITLE VI

*Violation of Title VI*

139. In a correspondence dated April 25, 2016, addressed to Dr. Potter, Dr. Langowits, Ms. Elizabeth Bristol, and Dr. Bonnevie, from Ms. Hose, Ms. Hose, made recommendations to expel the Plaintiff from school, based on her assumption that all the conflicts in which the

Plaintiff and his teammates were involved, were caused by the Plaintiff's behavior.

140. Ms. Hose admitted that there were no evidences to prove that the conflicts within the team were caused by the Plaintiff, that he had threatened or harassed his teammates, however the fact that his teammates perceived the Plaintiff's interaction as a threat it was enough to to determine the Plaintiff's accountable for the accidents and to expel him from school.

141. In the same correspondence, Ms. Hose said to be concerned "[…] at duality of his interactions (belligerent and antagonist towards his peers, pleasant and "solution-seeking" with administration)" affirming that such a duality, of interaction was related to the Plaintiff's cultural difference.

## PURPOSEFUL INTENSIFICATION OF BABSON COLLEGE POLICIES AGAINST THE PLAINTIFF

142. On April 25, 2016, Professor Potter sent correspondence to Professor Langowitz and to Professor Bonnevie, suggesting the removal of the Plaintiff 's from the program.

143. On April 25, 2016, in a reply to Professor Potter communication of the intention of dismiss the Plaintiff, Professor Langowitz informed Professor Potter that the academic policies as well as the policies concerning the community standards enforced at that time were not sufficient to support Plaintiff's dismissal unless they were to be strengthened.

144. In June 2016 Babson College published an updated edition of the 2015/2016 Graduate Student handbook that included new incremented policies concerning the parameters for the evaluation of satisfactory academic progress which newly included the student ability to demonstrate a collaborative teamwork.

"After each semester and module, the Academic Standards Committee (ASC) reviews the standing of all students whose cumulative GPA is below 2.80, or

who receive a failing grade or an incomplete grade in a course, *or who receive*

*a deliverable and/or course grade adjustment due to ineffective teamwork or*

*failure to demonstrate collaborative teamwork*." (*addition* to Babson College

Graduate Student Handbook 2015/16, updated version of June 15, 2016.)

ACADEMIC PROBATION

145. On May 12, 2016, despite the Plaintiff's grade dispute was still ongoing, Ms. Hose sent
correspondence to the Plaintiff informing him that he was placed under academic probation
by the Academic Standard Committee due to the F grade received in the Strategy course
and due to fall of his GPA under 2.8GPA.

146. Plaintiff replied to Ms. Hose letting her know that his grade dispute was still ongoing and
that he would have acknowledged the receipt of the letter once the grade dispute
process would have been completed.

147. Ms. Hose replied to the Plaintiff saying that Plaintiff must had acknowledged the receipt of
the letter independently from the ongoing grade dispute.

148. Ms. Hose did not inform the Plaintiff of his right to appeal the Academic Standard
Committee decision to place the Plaintiff on Academic Probation.

*Summer semester 2016   1st team transition and recognition of Plaintiff's good character*

149. In May 2016, Plaintiff was moved to a different team.

150. Plaintiff new team was collaborative with each other and with the Plaintiff as well.

151. On May 15, 2016, Plaintiff and his new team started to work together in the "Business
Law" class and in the "Introduction to Financial Management" class.

152. On May 24, the class representative wrote to Professor Potter and Ms Hose the following

message:

> "I wanted to touch base – as we have had our new group mate
> for almost two weeks. Sebastiano is very active in the group
> work, and contributes a lot. He set expectations early on
> regarding the health, family issues he is dealing with and his
> schedule. He has been nothing but respectful and polite"

*Summer semester, 2016   Business Law course*

153. During the "Business Law" course, Plaintiff again was challenged by the hostile attitude of

the Business Law course Professor.

154. Plaintiff noticed that the Professor provided the students with her feedback, whether

negative or positive, on the responses concerning the threads posted on the discussion board

but not to him, despite his constant participation to the board discussions.

155. On June 11, 2016, Plaintiff contacted via email the Professor asking for an assessment of

his contribution and the Professor replied that Plaintiff participation was not adequate.

156. On June 11, 2016, Plaintiff contacted the Class Representative to verify the Business Law

requirements concerning the participation in the discussion board. The Class

Representative reassured the Plaintiff that the Professor response to his email concerning

the discussion board requirements included wrong information.

157. The Professor asked Plaintiff to intensify his discussion board participation.

Plaintiff passed both courses with a B but Plaintiff did not dispute the grade to avoid

additional stress.

ACADEMIC ACCOMMODATIONS

158. Because of the issues encountered in the program Plaintiff developed grief, distress and

anxiety. Plaintiff sustained these feelings through the rest of the program.

159. In the attempt to reduce the impact of the sufferance on Plaintiff health issues, Plaintiff sought and obtained limited academic accommodations through the Office of Learning Disabilities Center.

160. As suggested by the Director of the Learning Disabilities Center, Ms Powell, Plaintiff set up a meeting with Jessica Hose to seek guidance and at the same time to ask for advices concerning the study plan.

161. On September 27, 2016, Plaintiff met with Jessica Hose at the Graduate Academic Services Office and discussed the Plaintiff study plans and the academic accommodation he had received.

162. On the same occasion, Ms. Hose mentioned to the Plaintiff that around January 2017, Plaintiff would have received a dismissal letter, but she also told the Plaintiff not to worry about that letter because the dismissal letter would been a mere formality since the Plaintiff had to reply with a simple and short letter to persuade the Standard Academic Committee that he was worthy to be readmitted, and that his letter would have been accepted.

## DEFENDANT INTEREFERENCE WITH THE PLAINTIFF'S DISABILITY RIGHTS

163. On January 5, 2017, Plaintiff received the dismissal letter from Ms. Hose. Following the suggestions she gave him during the meeting on September 27, 2016, and the directions that Ms. Hose provided the Plaintiff with, via email, Plaintiff wrote a letter to the Standard Academic Committee pleading for readmission.

164. On January 6, 2017, Plaintiff received a letter from Dean William Lamb stating that Plaintiff request for reinstatement was approved. However, Dean Lamb informed the Plaintiff that his reinstatement was subject to a stricter conditions and supervision.

"Dear Sebastiano,

27

I have received your appeal letter requesting reinstatement into the F.W. Olin Graduate School of Business Blended Learning MBA program. Upon review of your letter, together with the Academic Standards Committee's file and your overall student record, I am pleased to inform you that your request for reinstatement has been approved subject to the following conditions:

- You will remain on Academic Probation.

- You must complete the SLE (MBA7401) with a grade of B+ or better.

- Your record will be reviewed again at the mid-point of the Spring 2017 semester to determine if you have continued to make satisfactory progress towards the minimum 2.8 GPA required.

The committee noted that your chosen electives (all in finance) will be an especially challenging set of courses. You might consider making an appointment to see Dr. Mark Potter, Associate Dean (and finance professor) to discuss elective choices before classes begin.

The Academic Standards Committee will notify you when your record is next reviewed. If you fail to earn the minimum required GPA at that point you will be dismissed from the F.W. Olin Graduate School of Business with no further option for appeal. A copy of this letter will be placed in your student file."

## DR. POTTER, ASSOCIATE DEAN AND FINANCE PROFESSOR DELIBERATE INDIFFERENCE TOWARD PLAINTIFF REQUESTS FOR ASSISTANCE

165. On January 16, 2017, as recommended by Dean Lamb, Plaintiff reached out to Professor

Potter to make an appointment in order to discuss a suitable course plan concerning the

Finance concentration.

166. On January 18, 2017, Professor Potter, ignored Plaintiff's request for an appointment, he

just replied to the Plaintiff email providing him with a short comment which simply

emphasized to the Plaintiff his course selection would not have helped him to raise his

GPA.

167. On January 18, 2017, Plaintiff replied to Professor Potter with a different course selection asking his opinion again.

168. Professor Potter replied on February 3, 2017 two weeks after that the Plaintiff had already started the new courses.

169. At that point of the semester, it was difficult for the Plaintiff to switch courses unless he would have withdrawn from them. Plaintiff withdrawn from the classes he had registered would have caused the Plaintiff financial losses.

170. On May 17, 2017, Plaintiff reached out to Dr. Potter asking for a meeting to discuss his academic status. Dr. Potter denied the Plaintiff request for a meeting.

## SPRING SEMESTER 2017 - CAPITAL MARKET COURSE: PROFESSOR ASHBURN AND PROFESSOR MILAS ADVERSE ACTIONS AGAINST THE PLAINTIFF

171. During the Spring semester Plaintiff attended the "Capital Markets" course, co-lectured by Mr Robert Milas and Mr John Ashburn.

172. Despite the fact that the Plaintiff informed Professor Milas and Ashburn of his disability status and provided them with the Letter written from Learning Disabilities Center, Professor Milas and Ashburn demonstrated a strong of skepticism regarding the Plaintiff disability and the challenges that Plaintiff was facing due to his condition and the medical treatments.

173. During the lectures Plaintiff was often target of Professor Milas and Ashburn sarcasm which recurrently embarrassed the Plaintiff in front of the class. Professor Ashburn made effort to directly and indirectly disclose the Plaintiff's status of protection under the category of American with Disability Act.

174. Professor Ashburn disclosed publicly to other students that Plaintiff was being provided with accommodations.

175. Due to the degree of distress caused by Prof. Ashburn and Professor Milas, Plaintiff was forced, to request Director Mary Powell's intervention to stop their prejudicial and discriminatory activity against the Plaintiff.

PLAINTIFF ACADEMIC PROGRESS *"mid-point of the Spring 2017"*

176. By middle spring Plaintiff had completed the SLE (MBA7401) course with a grade of "B+" as requested by Dean Lamb.

177. By mid-point spring semester 2017, Plaintiff cumulative GPA was 2.86.

178. Plaintiff completed the Spring semester 2017 with a 2.86 GPA.

179. At the end of the Spring semester 2017, despite the sufferance and the obstacles encountered in the Capital Market course, Plaintiff made substantial academic progress toward the minimum cumulative of 2.80 GPA by raising his cumulative grade point average from 2.42 to 2.73 GPA.

180. Meanwhile the Plaintiff had started the "Capstone" course taught by Professor Marcinowski. Plaintiff had already begun to contribute to the formation of a new team and to contribute to initial assignments. Plaintiff and his new team were proceeding expeditiously.

PLAINTIFF DISMISSAL FROM PROGRAM

181. Since in, or around, the mid-spring 2017 semester the Plaintiff had not yet received any review and decision from Academic Standards Committee that concerned the Plaintiff's academic status, as it was indicated by Dean Lamb in his letter sent to the Plaintiff on January 6, 2017, and since the Plaintiff had exceeded the goal set under the academic

probation period that was supposed to last until the mid-spring 2017 period, two months

later, and exactly on May 16, 2017, Plaintiff sent correspondence to Ms. Hose seeking for

confirmation that he was no longer under academic probation due to the fact that he had

exceeded the mid-semester goals, a had made substantial academic progress.

182. Ms. Hose replied that the Academic Standard Committee would have met that week.

183. Unsatisfied by Ms. Hose reply, on May 17, 2017, Plaintiff reached out to Dr. Potter asking

for a meeting to discuss his academic status. Dr. Potter denied the Plaintiff request for a

meeting.

184. Meanwhile, the same day Dr. Potter reached out to Ms. Hose asking for the Plaintiff overall

status.

185. Ms. Hose replies to Dr. Potter with the following message:

> "Hi Mark,
>
> Yes:
> • In January he received a letter from Will stating that he must earn a 2.8
>   by the end of the spring semester or he will be dismissed, no appeal
>   (attached).
> • This semester he earned the following:
>   - Capital Markets A-
>   - Risk Management C-
>   - Corporate Finance B
>   - Cumulative GPA 2.73
> • He has been notified by the Registrar's office that he is not eligible to
>   walk in commencement.
> • He contacted me yesterday seeking reassurance. I let him know simply
>   that the ASC would be meeting this week.
> • He will tell you that the Handbook states that a student may take
>   additional coursework to achieve a 2.8. This is true, but it is at the
>   discretion of the ASC, does not trump the Dean's decision/previous
>   ASC recommendations and is generally reserved for students in their
>   final semester who have a 2.79. (The Handbook will be updated

this summer for clarity). The Handbook also states clearly that a student may be dismissed at any point.

• Sebastiano posits that it is mathematically possible to achieve a 2.8 this summer. This is true; however it was also mathematically possible this semester and he failed to do so.

I'm at my desk until gam if you'd like to chat.
Thanks,
Jessica"

186. The same day at 2:01 PM, Ms. Hose reached out Dean Lamb to whom sent the following

email:

"Dear Will,

I am writing to let you know that the Academic Standards Committee just met regarding Blended Learning student Sebastiano Patane. Sebastiano was dismissed from the graduate school at the conclusion of the fall semester and was subsequently reinstated upon appeal. At the conclusion of the spring semester he has failed to achieve the minimum required 2.8 cumulative GPA. It is the committee's recommendation that this student be dismissed from the graduate school.

I will follow up with a letter for your signature by tomorrow morning.

I am available to answer any questions or concerns, as are the other members of the committee.
Kind regards,

Jessica"

187. As of May 17, 2017, Plaintiff had completed 33 credits of the 46 credits required to

complete the Program coursework.

188. Plaintiff was expelled from Babson College as of May 18, 2017.

## COUNT I

### Violation of Title VI of the Civil Rights Act of 1964 [42 U.S.C. 2000d et seq],

189. Plaintiff repeats and realleges the allegations above as fully set forth herein.

190. Defendant Babson College is a recipient of federal funding, and is thus subject to

Title VI of the Civil Rights Act of 1964.

191. Pursuant to Title VI, Defendant Babson College is prohibited from excluding from participation in, denying the benefits of, or discriminating any student on the ground of race, color, or national origin.

192. Plaintiff has been subjected to discrimination on the basis of his national origin at Defendants Babson College.

193. Following the incident occurred on April 22, 2016, Defendant Babson College through and by Ms. Hose, made capricious unwarranted attempt to expel the Plaintiff from school.

194. Ms. Hose made recommendation to expel the Plaintiff from the Program prior to acquiring adequate evidences through the conduction of a proper investigation and prior to hearing the Plaintiff's testimony in his defense.

195. Ms. Hose recommendation to expel the Plaintiff, was based on unsubstantiated claims and on Ms. Hose's biased perception of the Plaintiff's character.

196. Ms. Hose perception and misrepresentation of the Plaintiff 's character was characterized by Ms. Hose prejudice against the Plaintiff's cultural background, therefore in absence of substantial evidences, Ms. Hose effort to expel the Plaintiff from the Program was based on the sole basis of her cultural prejudice as well.

197. Ms. Hose degree of participation and involvement in the Plaintiff's course of study was intense. Ms. Hose misused her duty of mediator between the Plaintiff and Babson College by manipulating all process through which the Plaintiff might have exerted his rights as student, and by manipulating the interaction between the Plaintiff and the program.

198. As an Associate Director of the Blended Learning Program, Ms. Hose is enough entrusted, and holds sufficient power within Babson College administration to influence other

administrators' perception of the students' character as well as to influence their decisions

concerning the students' academic program path.

199. Due to Ms. Hose prejudice against the Plaintiff cultural background, all actions conducted

by Ms Hose which involved the Plaintiff's attendance and advancement in the program

were conducted with doubtful fairness.

200. Ms. Hose interference has certainly concurred to the dismissal of the Plaintiff from the

Program on May 2017.

**COUNT II**
**42 U.S.C. § 1983 – XIV Amendment of the U.S. Constitution**

201. Plaintiff repeats and realleges the allegations above as fully set forth herein.

202. Defendant Babson College is a recipient of federal funding, and is thus subject to

Title 42 of the U.S.C. § 1983.

203. Pursuant to 42 U.S.C. § 1983, Defendant Babson College is prohibited from depriving the

Plaintiff of his rights secured by United States Constitution and Laws.

69. Pursuant to Fourteenth Amendment to the United States Constitution, Plaintiff enjoys a

property interest in his status as a student at the Defendant University and in the education

he has undertaken to receive, as well as a liberty interest in his reputation.

204. Defendant Babson College, has violated the Fourteenth Amendment to the United States

Constitution by depriving the Plaintiff with equal protection of law and due process.

**Defendant Violation of Equal Protection clause**

a. *Unequal treatment*

205. Defendant Babson College did not provide the Plaintiff with equal treatment as other

Students in similar circumstances.

206. After the first incident within the Plaintiff team, one of his teammates was granted with the opportunity to leave the team after discussing his case with Professor Bonnevie.

207. Plaintiff had requested to change the team to Professor Bonnevie as well, but unlike his former teammate, Plaintiff request to change team was ignored.

208. Plaintiff was strongly discouraged from escalating his complaints about his victimization on behalf of his teammates. Unlike the Plaintiff, his teammates complaints against him were supported by Babson Administrators and Faculty Members and with great emphasis.

209. Babson College exhibited deliberate indifference to the Plaintiff request to change team despite his request was substantiated by material facts and evidences.

210. Defendant Babson College has discriminated against the Plaintiff by subjecting him to a stricter scrutiny of his behavior than the scrutiny applied to his Peers.

211. Defendant Babson College has discriminated against the Plaintiff by prejudicially granting Plaintiff's Peers a higher degree of trustworthiness compared to the trustworthiness granted to the Plaintiff.

212. Defendant Babson College has discriminated against the Plaintiff by subjecting him to make academic work under disadvantaged conditions compared to his teammates.

### b. *Defendant Babson failure to secure protection the Plaintiff from Peers' adverse actions*

213. Defendant Babson College, in violation of its internal policies as well as in violation of the Plaintiff's constitutional rights, has failed to protect the Plaintiff from being discriminated against his national origin by Peers, as well as to protect the Plaintiff from his Peers' bullying and harassing actions perpetrated against him.

214. Plaintiff's Peers' adverse actions against the Plaintiff impaired his complete participation in the program and in all its extents.

215. Plaintiff's Peers interference with the Plaintiff's participation prevented the Plaintiff from making academic advancement at his full potential and from establishing relationships within the student cohort.

216. In so doing, Plaintiff's Peers caused severe damages to the Plaintiff's academic performance, as well as to his reputation. As a consequence Plaintiff suffered severe emotional distress.

217. Plaintiff's Peers infliction of damages to the Plaintiff's academic performance as well as to his emotional wellbeing created a hostile school environment to the Plaintiff which impacted the Plaintiff's attendance in the Program heavily and negatively.

218. Defendant Babson College was aware of the Plaintiff's victimization but exhibited deliberate indifference by not taking adequate actions to stop the Plaintiff's Peers to persecute the Plaintiff.

219. By allowing Plaintiff's Peers to exert such a disruptive behavior and actions against the Plaintiff, Defendant Babson College set the premises for the Plaintiff failure in the Program.

### c. *Discrimination based on Plaintiff's disability status*

220. Defendant Babson College, has failed to protect the Plaintiff from Capital Market course Lecturers Mr. Ashburn and Mr. Milas discriminating and denigrating actions perpetrated against the Plaintiff on the basis of his disability status.

221. Mr. Ashburn and Mr. Milas discriminating actions against the Plaintiff interfered negatively with the Plaintiff attendance in other courses and simultaneously, due to the unauthorized disclosure of the Plaintiff needs for academic accommodations, violated the Plaintiff right of Confidentiality of his disability status.

222. In so doing, by Mr. Ashburn and Mr. Milas, also have violated also the Plaintiff enjoyment of his Privacy right secured under the MGL c.214, § 1B Right of privacy.

223. Defendant Babson College through and by Mr. Ashburn and Mr. Milas, contributed to create a hostile school environment where the Plaintiff did not feel respected, safe, supported, and protected.

224. Plaintiff suffered severe emotional distress which impacted the Plaintiff's ability to study efficiently in other courses with higher level of difficulty.

225. Defendant Babson College failed to protect the Plaintiff right to fully enjoy his property interest in education he had undertaken to receive while attending the MBA Program.

### Defendant violation of Due Process clause

#### d. *Professor Marcinowski*

226. During the Fall semester 2015, Plaintiff's academic file was marked negatively due to Professor Marcinowki complaints regarding his perceived Plaintiff's academic unfitness to the Director of the Graduate Program prior to discuss his concerns with the Plaintiff and to give him the opportunity to clarify them. In so doing Defendant Babson College through and by Professor Marcinowski has violated the Plaintiff right to a procedural due process.

#### e. *Ms. McVey*

227. On November 16, 2015 Ms McVey reached out to the faculty directors and other administrators to refer that one of the Plaintiff's teammates complained about the Plaintiff.

228. Ms. McVey correspondence, turning a report concerning the substantial fact where a Plaintiff's teammate complained about the Plaintiff, into a gossip which carried a prejudicial message against the Plaintiff based on Plaintiff mischaracterization and libel. In so doing Defendant Babson College through and by Ms. McVey violated the Plaintiff

right to a procedural and substantial due Process.

229. Following Ms. McVey report on November 16, 2015, Plaintiff unknowingly became

victim of Program Administrators and Faculty Directors and Professors orchestration to

expel the Plaintiff from school.

## f. *Unwarranted attempt of Plaintiff dismissal*

230. Following the incident on April 22, 2016, Plaintiff was again unknowingly subjected to the

administration decision to expel the Plaintiff from school prior to be heard from

administrators and prior the conduction of a fair and proper investigation of the facts on

behalf of administrators.

## g. *Grade dispute*

231. On May 5, 2017, following Professor Cummings capricious failure of the Plaintiff in the

Strategy course, Plaintiff initiated the grade dispute process.

232. Plaintiff dispute of the failing grade received by Prof. Cummings in the Strategy course

was conducted without any effort on behalf of Dr. Rollag and Dr. Langowitz to apply fair

judgment in revising the Plaintiff situation especially after Dr. Langowitz had witnessed

Professor Cummings personal aversion and prejudgment against the Plaintiff. In so doing

Defendant Babson College through and by Dr. Rollag and Dr. Langowits, violated the

Plaintiff right to a substantial due Process.

## h. *Academic probation process*

233. On May 12, 2016, Plaintiff received communication from Ms. Hose, which concerned the

Academic Standard Committee (ASC) decision to place the Plaintiff under academic

Probation due to the Plaintiff's GPA fall under the graduate program GPA benchmark.

234. Defendant Babson College through and by the ASC decision to place the Plaintiff under academic Probation violated the Plaintiff right to a procedural due process, due to the fact that the Plaintiff was still in the process of disputing the failing grade received by Professor Cummings.

### i.   *Ms. Hose omission of procedural information*

235. On the same occasion, Ms. Hose failed to inform the Plaintiff that he had the right and the opportunity to dispute the Academic Standard Committee decision and, if not by himself, with the aid the Student Affairs office, or through his own Attorney.

236. In so doing Defendant Babson College through and by Ms. Hose violated the Plaintiff right to a substantial due Process.

### j.   *Ms. Hose misguidance of the Plaintiff*

237. Plaintiff was misguided by Ms. Hose when on September 27, 2016, she persuaded the Plaintiff that the expulsion letter he would have received in January 5, 2017 would have been just a formality and that the Plaintiff just needed to write a persuasive letter explaining the reasons for which he should have been readmitted.

238. The dismissal letter received by the Plaintiff on January 5, 2017 was not part of a simple formality but an official communication that the Plaintiff was expelled from school.

239. Because of Ms. Hose misleading information, the Plaintiff instead of writing to the Academic Standard Committee to pleading for being readmitted, the Plaintiff could have disputed the communication of his expulsion received on January 5, 2017, with the aid of an attorney.

### k.   *Violation of Dean Lamb letter terms, and Plaintiff right to substantial and procedural due process.*

240. Around March 2017, Plaintiff's academic probation was supposed to be reviewed and and cleared by the Academic Standards Committee but in violation of Dean Lamb directions, Plaintiff's academic status was not reviewed neither updated.

### l. *Violation of procedural and substantial due process.*

241. On May, 2017, reached out Ms. Hose and Professor Potter asking respectively to be reassured that he was academically in good standing and to set up an appointment to discuss his academic progress. Ms. Hose and Dr. Potter disregarded Plaintiff's request.

242. Meanwhile, the same day Ms. Hose sent to Dr. Mark Potter a general description of the Plaintiff academic status, as he had requested, that was uncomplete, false and misguiding.

243. In the same email, along with the information on the Plaintiff's status, Ms. Hose again argued against the Plaintiff capability to make further academic progress, and arbitrarily established policies on the spot at the Plaintiff's disadvantage that were not included in the Graduate student handbook.

244. Defendant Babson College through and by its Administrators and Faculty Members' actions had willfully created an educational environment that was clearly hostile to the Plaintiff under many degrees and circumstances.

245. Administrators and Professor had actual knowledge of all adverse actions to which the Plaintiff was being subjected but, by refusing to intervene in timely manner and efficiently and in violation of their duty of care, exhibited deliberate indifference to all the discriminatory actions mentioned above.

246. Defendant Babson College did not provide the Plaintiff with adequate protection against Administrators and Professor negligent and tortious conduct. Plaintiff's course of studies has been subjected to biased and capricious academic evaluations, which ultimately, along

with all the other adverse actions faced by the Plaintiff, caused the Plaintiff to be

unlawfully dismissed from the Program.

247. In so doing Defendant Babson, has Plaintiff has unlawfully deprived of his right to enjoy

his property interest in his status as a student at Babson College, and in the education he

had undertaken to receive, as well as a liberty interest in his reputation due to Defendant

Babson College violation of the Plaintiff Constitutional right secured by the XIV

Amendment "due process" and "equal protection of the laws".

## COUNT III
### 42 U.S.C. § 1985 (3) – 42 U.S. Code § 1986 – XIV Amendment of the U.S. Constitution

248. Plaintiff repeats and realleges the allegations above as fully set forth herein.

249. Pursuant to 42 U.S.C. § 1985 (3), Babson College is prohibited to conspire against the

Plaintiff's enjoyment of his civil rights.

250. Pursuant to Fourteenth Amendment to the United States Constitution, Plaintiff enjoys a

property interest in his status as a student at the Defendant University and in the education

he has undertaken to receive, as well as a liberty interest in his reputation.

251. Defendant Babson College through and by certain Administrators and Faculty members,

conspired, directly or indirectly, with the Plaintiff's teammates against the Plaintiff's

enjoyment of his rights secured by United States Constitution and Laws secured by the 14th

amendment to the U.S. Constitution.

252. In so doing, Defendant Babson College took actions in furtherance of this conspiracy,

causing injury to Plaintiff.

253. The misconduct described in this Count was undertaken with malice, willfulness, and

reckless indifference to the rights of others.

254. Each Defendant was aware of, or actively participated to, other Defendants' perpetration of

41

adverse actions against the Plaintiff but did not oppose to their practices against the Plaintiff.

255. As a direct and proximate Defendants' actions, Plaintiff was expelled from the Program on May 2017.

256. Plaintiff has suffered damages as a result.

## COUNT IV
### ADA. 42 U.S.C. §12203 (b) – Interference with ADA rights

257. Plaintiff repeats and realleges the allegations above as fully set forth herein.

258. Defendant Babson College is a recipient of federal funding, and is thus subject to ADA. 42 U.S.C. §12203 (b).

259. Pursuant ADA. 42 U.S.C. §12203 (b) Defendant Babson College is prohibited to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of any right granted or protected by the American with Disability Act.

260. Plaintiff qualified to receive Academic Accommodation under the ADA.

261. After Defendant Babson College acknowledged the disability status of the Plaintiff, Defendant Babson College, through and by Dr. Lamb exposed the Plaintiff to a higher degree of academic challenges.

262. In doing so, Dean Lamb, nullified the scope of the accommodations granted to the Plaintiff under American Disability Act, to provide the Plaintiff with equal opportunity to make academic achievements.

263. Defendant Babson College interfered with the Plaintiff enjoyment of rights granted and protected by the American with Disability Act.

264. As a direct and proximate Dean Lamb actions Plaintiff was expelled from the Program on

May 2017.

265. Plaintiff has suffered damages as a result.

## COUNT V
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

266. Plaintiff repeats and realleges the allegations above as fully set forth herein.

267. Professor Cummings breached his duty of care owed to the Plaintiff by not showing any interest to the Plaintiff performance during the course especially when Professor Cummings believed that the Plaintiff was not performing well.

268. Plaintiff was misled by Professor Cummings' indifference toward the Plaintiff performance.

269. Plaintiff, in good faith, considered Professor Cummings "silence" as a sign of Professor Cummings' satisfaction with the Plaintiff work.

270. Plaintiff, in good faith, was certain that if his performance was lacking, Professor Cummings would have warned him.

271. Professor Cummings instead, exhibited deliberate indifference and recklessly refused to offer his guidance to the Plaintiff.

272. Furthermore, Professor Cummings maliciously induced the Plaintiff to establish an agreement concerning his course completion.

273. The agreement was contextually framed from Professor Cummings with the sole intention to fail the Plaintiff.

274. As a direct cause of the above mentioned fraudulent agreement, Plaintiff failed the strategy course.

275. Plaintiff failure in the Strategy class caused the Plaintiff to suffer of severe emotional distress.

276. By intentionally failing the Plaintiff, Professor Cummings has intentionally inflicted severe emotional distress to the Plaintiff.

277. As a direct and proximate Professor Cummings' actions Plaintiff was expelled from the Program on May 2017.

278. Plaintiff has suffered damages as a result.

## COUNT VI
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

279. Plaintiff repeats and realleges the foregoing allegations as if more fully set forth herein.

280. Each Defendant owed duties of care to the Plaintiff. Such duties included, without limitation, a duty of reasonable care in conducting the investigation of the allegations against him in a fair, impartial and equitable manner.

281. Each Defendant breached its duties owed to the Plaintiff.

282. Such breach by all Defendants created an unreasonable risk of causing the Plaintiff emotional distress in that Plaintiff's academic record is irrevocably and irreversibly tarnished.

283. As a direct and foreseeable consequence of Defendants' actions, Plaintiff sustained tremendous damages, including, without limitation, severe emotional distress, loss of educational and career opportunities, economic injuries, and other direct and consequential damages.

## COUNT VII
## BREACH OF CONTRACT

284. Plaintiff repeats and realleges the allegations above as if fully set forth herein.

285. Plaintiff contracted with Babson College to provide him with access to its M.B.A. degree program.

286. When Plaintiff entered Babson College and paid his tuition, the parties entered into a contract with each other. The terms of the contract are mostly implied but some terms are reduced to writing in the forms of policies and procedures.

287. The contract between Plaintiff and Defendant Babson College is comprised of Babson's handbooks, manuals, and other documents.

286. Defendant Babson College breached its contract with Plaintiff when its Administrators and Faculty Members failed to adhere to numerous provisions of the Student Handbook.

288. Defendant failed to provide the Plaintiff with a safe and non-discriminating educational, as well as a to provide an environment that is intellectually stimulating, emotionally supportive, safe, and free of harassment.

289. Defendant Babson, has failed to provide Plaintiff with effective interim measures to ensure that he would not be deprived of his educational opportunities while at Babson.
Defendant Babson further breached its contract with Plaintiff by retaliating against him after he opposed to his peers harassing behavior as well as after the Plaintiff disputed the grades and complained about faculty members.

290. As a direct and proximate cause of Defendant Babson breaches of contract set forth above, Plaintiff was expelled from the Program.

291. Plaintiff has suffered damages as a result of Defendant's Babson breaches, including substantial delay or loss of his M.B.A, lost job opportunities, and lost future wages.

## COUNT XII
### BREACH OF COMMON LAW DUTY OF FAIRNESS

292. Plaintiff repeats and realleges the allegations above as if fully set forth herein.

293. In addition to the breaches of Babson explicit policies and procedures, Babson College had a duty to provide fairness in all proceeding both by its own policies, and those

imposed by Massachusetts law.

294. Plaintiff relied on, and had an expectation, that the process which he has would be

conducted in a fair manner.

295. Babson College violated duty of fairness.

296. As a direct and proximate cause of Defendant Babson breaches of contract set forth above,

Plaintiff was expelled from the Program.

297. Plaintiff has suffered damages as a result.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Grant the Plaintiff with injunctive relief. Plaintiff demands he be allowed

to complete the MBA Program;

2. Award Plaintiff compensatory and punitive damages in an amount to be

determined at trial;

3. Award Plaintiff the reasonable costs and expenses of this action as

provided by applicable law;

4. Grant all such other relief as this Court deems equitable and just.

## PLAINTIFF DEMANDS A TRIAL BY JURY

August 25, 2020

Respectfully submitted,
*Sebastiano Patane*
54 Concord Ave,
Norwood, MA 02062
s.g.patane@gmail.com

FILED
IN CLERKS OFFICE
2020 AUG 25 PM 3: 30
U.S. DISTRICT COURT
DISTRICT OF MASS.