UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SEBASTIANO PATANE, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| BABSON COLLEGE, MARK POTTER, | * | |
| Individually and in his official capacity as | * | |
| Associate Dean of the Graduate School at | * | |
| Babson College, MICHAEL CUMMINGS, | * | |
| Individually and in his official capacity as | * | Civil Action No. 1:20-cv-11603-ADB |
| Professor in the Blended Learning Program at | * | |
| Babson College; and JESSICA HOSE, | * | |
| Individually and in her official capacity as | * | |
| Associate Director of the Part Time MBA | * | |
| Program at Babson College, | * | |
| | * | |
| Defendants. | * | |
| | * | |

**MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS**

BURROUGHS, D.J.

Plaintiff Sebastiano Patane ("Plaintiff"), who is proceeding *pro se*, asserts various claims against Babson College ("Babson"), Mark Potter, Ph.D. ("Dr. Potter"), Michael Cummings, MBA, Ph.D. ("Dr. Cummings"), and Jessica Hose ("Ms. Hose," and together with Babson, Dr. Potter, and Dr. Cummings, "Defendants") in connection with Plaintiff's participation in and dismissal from Babson's Master of Business Administration Blended Learning Program (the "MBA Program"). [ECF No. 18 ("Am. Compl.")]. Currently before the Court is Defendants' motion to dismiss (1) Plaintiff's entire complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) because his claims are barred by res judicata and (2) Plaintiff's complaint as to Dr. Potter and Ms. Hose pursuant to Federal Rule of Civil Procedure 12(b)(5) because Plaintiff

failed to properly serve those defendants.  [ECF No. 13].  For the reasons set forth below,

Defendants' motion is <u>GRANTED</u>.

I.      **BACKGROUND**

    A.      **Factual Background**

    The following facts are drawn from the amended complaint, [Am. Compl.], the

well-pleaded allegations of which are taken as true for the purposes of evaluating the motion to

dismiss.  <u>See</u> <u>Ruivo v. Wells Fargo Bank, N.A.</u>, 766 F.3d 87, 90 (1st Cir. 2014).  As it may on a

motion to dismiss, the Court has also considered "documents incorporated by reference in [the

complaint], matters of public record, and other matters susceptible to judicial notice."

<u>Giragosian v. Ryan</u>, 547 F.3d 59, 65–66 (1st Cir. 2008) (alteration in original) (quoting <u>In re</u>

<u>Colonial Mortg. Bankers Corp.</u>, 324 F.3d 12, 20 (1st Cir. 2003)).

    Plaintiff is a former graduate student in the MBA Program, which he attended between

October 2015 and May 2017.  [Am. Compl. ¶¶ 1–3, 188].  Plaintiff resides in Norwood,

Massachusetts.  [<u>Id.</u> ¶ 35].  He is a first-generation immigrant from Sicily, who relocated to the

United States approximately six years before he enrolled at Babson.  [<u>Id.</u> ¶ 39].  Babson is a

private co-educational college located in Babson Park, Massachusetts.  [<u>Id.</u> ¶ 36].  Dr. Potter is

the Associate Dean of the Graduate School at Babson.  [<u>Id.</u> ¶ 37].  Dr. Cummings is a professor

in the MBA Program.  [<u>Id.</u> ¶ 38].  Ms. Hose is "the Associate Director of [the] Part Time MBA

Program" at Babson.  [<u>Id.</u> at 1].[1]

---

[1] Ms. Hose is identified in the amended complaint's caption but is not listed in the section of the amended complaint labeled "Parties."  <u>Compare</u> [ECF No. 18 at 1 (listing Ms. Hose in caption)], <u>with</u> [<u>id.</u> ¶¶ 36–38 (listing Babson, Dr. Potter, and Dr. Cummings but not Ms. Hose)].  The Court therefore draws Ms. Hose's position from the caption of the amended complaint.

Plaintiff enrolled part time in the MBA Program in September 2015 and began attending the program on October 27, 2015. [Am. Compl. ¶¶ 3, 45]. During the Fall 2015 semester, Plaintiff was assigned to a team and he worked with that team on several group assignments. [Id. ¶ 3]. Throughout the semester, Plaintiff's team experienced numerous interpersonal issues and had trouble working together. [Id. ¶¶ 4–11, 55–76]. Plaintiff's teammates regularly "cut him off" and excluded his contributions from group projects. [Id. ¶¶ 6–7]. They used Plaintiff as a "scapegoat," attributed their problems to Plaintiff, and would "often resort[] to stereotypes surrounding Plaintiff's cultural background to . . . substantiate their complaints against" him. [Id. ¶¶ 5, 9–10].

In November 2015, Plaintiff and his teammates separately reached out to their professors regarding the team conflicts. [Am. Compl. ¶¶ 77–79]. Plaintiff sought help from one of his professors, Professor Bonnevie, and told him that he wanted to raise his team problems with "the Dean." [Id. ¶¶ 77–78]. Professor Bonnevie discouraged Plaintiff from pursuing his complaints and from escalating them to the Dean. [Id. ¶ 78]. Plaintiff's teammates, however, were encouraged to escalate their complaints. [Id. ¶ 79]. That same month, Ms. Hose, Dr. Potter, and other professors exchanged emails about the problems within Plaintiff's team. [Id. ¶¶ 80–82]. In one of these emails, sent by Ms. Hose to Dr. Potter, Ms. Hose noted that Plaintiff "was less active than his peers and that he did not fit well academically in the Program." [Id. ¶ 82].

On December 4, 2015, Plaintiff and his team met with one of their professors, Professor Marcinowski, to discuss the team's progress and an upcoming in-class presentation. [Am. Compl. ¶ 83]. Plaintiff's team eventually excluded him from contributing to that presentation, but Professor Marcinowski did not ask Plaintiff about this exclusion. [Id. ¶ 84]. Later that month, Plaintiff "received correspondence" from Professor Marcinowski stating that Plaintiff

3

was missing assignments and not performing well in his class.  [Id. ¶ 86].  Plaintiff informed

Professor Marcinowski that he was struggling in part due to his worsening health condition.[2]

[Id. ¶ 86].  Despite this, Professor Marcinowski did not tell Plaintiff of available assistance

through the Student Learning Center, and offered to assist Plaintiff only four days before the end

of the course.  [Id. ¶¶ 87, 90].  Professor Marcinowski also corresponded with Dr. Potter and Ms.

Hose and told them that Plaintiff had missed assignments and was struggling in class.  [Id. ¶ 88].

Plaintiff's problems with his team continued into the Spring 2016 semester.  See [Am.

Compl. ¶¶ 91–104].  During that semester, Plaintiff and his teammates attended two courses,

"Strategy" and "Data, Models and Decisions."  [Id. ¶ 91].  In late April 2016, Plaintiff's

teammates excluded him from a group assignment.  [Id. ¶¶ 92–93].  Plaintiff informed Professor

Cummings, who taught "Strategy," about the problems within the team and sent evidence of his

teammates' hostility.  [Id. ¶¶ 91, 94–95].

On April 22, 2016, the tension within the group escalated and Plaintiff was confronted by

his teammates.  [Am. Compl. ¶¶ 96–97].  They yelled at Plaintiff, blamed Plaintiff for the team's

"late progress," and one of the teammates threatened Plaintiff by saying "[s]top speaking or I

will say that you are being aggressive to the girls!"  [Id.].  After the incident, one of Plaintiff's

teammates went to the Admissions Office.  [Id. ¶ 99].  Plaintiff was then interrogated by the

campus police about the incident and was ultimately asked to return to class and not to interact

with other students.  [Id. ¶ 100].

After the April 22, 2016 incident, Plaintiff again sought help from Professor Bonnevie

and also reached out to Dr. Cummings to ask for a meeting about the incident.  [Am Compl.

---

[2] In 2012, Plaintiff had been diagnosed with chronic kidney disease and began hemodialysis
treatment in 2013.  [Id. ¶ 44].

¶¶ 105–06]. Dr. Cummings denied Plaintiff's request for a meeting. [Id. ¶ 106]. Meanwhile, Plaintiff's teammates told other students about the incident, falsely saying that Plaintiff was involved in a physical altercation. [Id. ¶ 104]. Eventually, on April 25, 2016, the "Class Representative" reached out to Dr. Potter and expressed that students in the MBA Program had concerns about working with Plaintiff. [Id.]. On that same day, Ms. Hose sent an email to Dr. Potter, Dr. Bonnevie, Associate Dean Nan Langowitz, and others recommending that Plaintiff be dismissed from the MBA Program because of these team conflicts, noting that Plaintiff's "duality"— pleasant with administrators but "antagonistic towards his peers"—was concerning and related to Plaintiff's cultural differences. [Id. ¶¶ 139–41]. Dr. Potter also wrote to Associate Dean Nan Langowitz recommending Plaintiff's dismissal. [Id. ¶ 142]. Dean Langowitz informed Dr. Potter that Plaintiff's actions were insufficient grounds for his dismissal based on Babson's policies and community standards. [Id. ¶ 143].

On April 26, 2016, Dr. Potter, Associate Dean Langowitz, Dr. Cummings, and others exchanged emails looking for a workaround to Plaintiff's team issues that would allow Plaintiff to complete his coursework. [Am. Compl. ¶¶ 110–11]. In these exchanges, Dr. Cummings referred to Plaintiff as "a cancer" and "a snake." [Id. ¶¶ 110–11]. That same day, Dr. Cummings asked Plaintiff to complete his course work alone and to work alone on the final exam. [Id. ¶¶ 112, 114]. Dr. Cummings also told Plaintiff that he would be responsible for individual posts, but would not be responsible for any further group posts in the class. [Id. ¶ 114]. Plaintiff accepted these conditions. [Id. ¶ 115]. Plaintiff assumed that Dr. Cummings would credit Plaintiff for his contributions to team assignments that were completed prior to the April 22, 2016 incident. [Id. ¶ 116]. Plaintiff also requested that Dr. Cummings let him do extra work to

make up for any shortcomings caused by team issues, [id. ¶ 117], but Professor Cummings denied the request, [id. ¶ 118].

On May 5, 2016, after the end of the Spring 2016 semester, Dr. Cummings wrote to Dr. Potter and Ms. Hose to inform them that Plaintiff had received a failing grade in his class. [Am. Compl. ¶ 124]. Dr. Cummings explained that the grade was due to Plaintiff's insufficient class postings, lack of class engagement, and a B grade on the final paper. [Id.]. On May 6, 2016, Plaintiff learned of his failing grade and began the grade dispute process. [Id. ¶ 125]. Plaintiff also sought an explanation for his failing grade from Dr. Cummings. [Id. ¶ 126]. Dr. Cummings told Plaintiff that he failed due to poor participation in class. [Id. ¶ 127]. While this grade dispute was ongoing, Ms. Hose informed Plaintiff that the Academic Standard Committee (the "Committee") had placed him on academic probation because his GPA was under the MBA Program's required 2.80 GPA and because he had failed a course. [Id. ¶ 145]. Ms. Hose failed to inform Plaintiff of his right to appeal the Committee's decision concerning academic probation. [Id. ¶ 148]. During the grade dispute process, Plaintiff complained that Dr. Cummings failed to consider his team issues and that the grade was "biased and not based exclusively on academic factors," but the administration concluded that there was no reason to change the grade. [Id. ¶¶ 133–38]. In May 2016, Plaintiff was reassigned to a team with which he worked well, and successfully completed his summer courses. [Id. ¶¶ 149–50].

Due to the distress, grief, and anxiety caused by the MBA Program, Plaintiff requested help from the Office of the Learning Disabilities Center ("LDC") "to reduce the impact of the sufferance on [his] health issues" and ultimately was allowed limited academic accommodations. [Am. Compl. ¶ 159]. The Director of the LDC, Ms. Powell, recommended that Plaintiff meet with Ms. Hose to seek guidance and advice on a study plan. [Id. ¶ 160].

In September 2016, Plaintiff met with Ms. Hose to seek advice on a study plan. [Am. Compl. ¶ 161]. At that meeting, Ms. Hose told Plaintiff that in January 2017 he would receive a letter dismissing him from the MBA Program that was a "mere formality" and that Plaintiff would only have to write a letter to the Committee seeking readmission to avoid dismissal. [Id. ¶ 162]. Plaintiff received the letter in January 2017 and replied to the Committee. [Id. ¶ 163]. Plaintiff was reinstated into the MBA Program subject to the conditions that he remain on academic probation and complete a certain course (the "SLE course") with a B+ or better, with the understanding that his record would be reviewed at the mid-point of the Spring 2017 semester to determine whether Plaintiff "continued to make satisfactory progress towards the minimum 2.8 GPA required." [Id. ¶ 164]. The correspondence indicated that if Plaintiff failed to earn the minimum GPA, he would be dismissed from the graduate school "with no further option for appeal." [Id.].

On January 16, 2017, Plaintiff contacted Dr. Potter to set up an appointment to discuss a suitable course plan. [Am. Compl. ¶ 165]. Dr. Potter responded to the email but ignored the appointment request. [Id. ¶ 166]. On January 18, 2017, Plaintiff emailed Dr. Potter again seeking advice on course selection and Dr. Potter did not respond until February 3, 2017. [Id. ¶¶ 167–68]. By that time, Plaintiff had already started courses and was unable to withdraw without experiencing "financial losses." [Id. ¶ 169].

During Plaintiff's Spring 2017 "Capital Markets" course, Plaintiff informed his professors, Professors Milas and Ashburn, that he had a disability and provided them with a letter from the LDC concerning the same. [Am. Compl. ¶¶ 171–72]. Professors Milas and Ashburn were skeptical of Plaintiff's claim of a disability and health condition and targeted him with embarrassing sarcasm. [Id. ¶¶ 172–73]. They also "made effort to directly and indirectly

disclose []Plaintiff's status of protection under the . . . [Americans with Disabilities Act ("ADA")]" and "disclosed publicly to other students that Plaintiff was being provided with accommodations." [Id. ¶¶ 173–74].  Plaintiff again sought the help of Ms. Powell from the LDC. [Id. ¶ 175].

By midway through the Spring 2017 semester, "Plaintiff had completed the [SLE course] with a grade of 'B+'" as required by his reinstatement conditions, however, Plaintiff's final, cumulative GPA at the end of the Spring 2017 semester was only 2.73, which was below the required 2.80.  [Am. Compl. ¶¶ 176, 179].  On May 16, 2017, Plaintiff reached out to Ms. Hose to ask about his academic probation and was told that the Committee was meeting that week. [Id. ¶¶ 181–82].  The next day, Plaintiff also reached out to Dr. Potter to ask for a meeting to discuss his academic status, but Dr. Potter denied his request.  [Id. ¶ 183].  That same day, Dr. Potter reached out to Ms. Hose about Plaintiff's status, and Ms. Hose told Dr. Potter that Plaintiff's cumulative GPA was a 2.73 and that "[Plaintiff] will tell you that the Handbook states that a student may take additional coursework to achieve a 2.8.  This is true, but it is at the discretion of the [Committee] . . . and is generally reserved for students in their final semester who have a 2.79." [Id. ¶¶ 184–85].  On May 18, 2017, following a recommendation from the Committee, Plaintiff was dismissed from the MBA Program for failing to meet the required minimum GPA.  [Id. ¶¶ 186, 188].

**B.    History of Prior Litigation**

Plaintiff's dismissal from the MBA Program was the subject of a previous lawsuit brought by Plaintiff.  On or around June 21, 2017, approximately one month after his dismissal from the MBA Program, Plaintiff commenced an action in Norfolk County Superior Court against Babson and William Lamb, the Dean of Babson's Graduate School ("Patane I").  See

[ECF No. 15-1 at 15–38 ("Patane I Compl.")].  Babson and Lamb removed that case to the District of Massachusetts.  See Notice of Removal, Patane v. Babson College and Will Lamb, Dean of Graduate Studies, No. 17-cv-11195 (D. Mass. June 28, 2017), ECF No. 1.

In Patane I, Plaintiff's four-count complaint alleged: (1) breach of contract by Babson for violations of the Student Handbook related to Plaintiff's dismissal, [Patane I Compl. ¶¶ 160–79]; (2) interference with contract and business advantage based on rights established by the Student Handbook, [id. ¶¶ 180–90]; (3) negligent infliction of emotional distress due to Plaintiff's dismissal from Babson, [id. ¶¶ 191–96]; and (4) violation of the ADA for failing to provide appropriate accommodations and to address professor bias after the April 2016 incident between Plaintiff and his teammates, [id. ¶¶ 197–210].  The defendants moved for summary judgment on all four counts.  See [ECF No. 15–2 ("Patane I Or.") at 2].  Plaintiff, who was represented by counsel in Patane I, did not oppose defendants' motion.  See [id.].

On October 10, 2018, Judge Stearns granted the Patane I defendants' motion for summary judgment on all four counts and entered judgment for the defendants.  [Patane I Or. (order); ECF No. 15-3 (judgment)].  On Count I, breach of contract, Judge Stearns found that the Student Handbook was not a contract and even if a contract existed, "Babson met [Plaintiff]'s reasonable expectations regarding the appeals process."  [Patane I Or. at 2–3].  On Count II, interference with contract and business advantage, Judge Stearns found that the claim failed because, again, no contract existed, but even if it did, Babson could not "interfere with its own contract."  [Id. at 3].  On Count III, negligent infliction of emotional distress, Judge Stearns found that Plaintiff offered insufficient evidence of negligence.  [Id.]  Finally, on Count IV, Judge Stearns found that Plaintiff failed to show "he could perform his job even with reasonable

accommodations" and that Plaintiff's claims that he was denied accommodations were unsupported.  [Id.].  Plaintiff did not appeal.

### C.    Procedural Background

Plaintiff commenced the present action ("Patane II") on August 25, 2020, see [ECF No. 1], and filed his second amended complaint on October 14, 2020, [Am. Compl.].[3]  Plaintiff's eight-count amended complaint asserts the following claims:

- Babson and Ms. Hose subjected him to national origin discrimination in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq. (Count I), [id. ¶¶ 189–200];

- Babson deprived him of his rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the U.S. Constitution in violation of 42 U.S.C. § 1983 when it provided preferential treatment to his peers and treated him unequally, failed to protect him from victimization and discrimination by his peers, failed to protect him from discrimination by his professors based on his disability, and deprived him of his due process rights when he was placed on academic probation and ultimately dismissed from the MBA Program (Count II), [id. ¶¶ 201–47];[4]

- Defendants conspired to prevent Plaintiff's enjoyment of civil rights under the Fourteenth Amendment of the U.S. Constitution in violation of 42 U.S.C. § 1985(3) (Count III), [id. ¶¶ 248–56];

- Babson interfered with Plaintiff's ADA rights by nullifying the scope of his accommodations and exposing him to a higher degree of academic challenges in violation of 42 U.S.C. § 12203(b) (Count IV), [id. ¶¶ 257–65];

---

[3] On August 27, 2020, Plaintiff filed his first amended complaint, [ECF No. 2], and then moved to file his second amended complaint on October 1, 2020, [ECF No. 10].  After Plaintiff moved to amend, but before the Court had ruled on it, Defendants filed their motion to dismiss.  [ECF No. 13].  The Court granted Plaintiff's motion to amend, but because the second amended complaint did not make substantive changes, the Court did not require Defendants to file a new motion to dismiss.  [ECF No. 17].  Accordingly, the Court considers Defendants' motion to dismiss to be a motion to dismiss the second amended complaint filed on October 14, 2020.

[4] Within Count II, Plaintiff also appears to allege that Professors Ashburn and Milas violated "Plaintiff['s] enjoyment of his Privacy right secured under the MGL c. 214 § 1B Right of privacy."  [Id. ¶ 222].  To the extent Plaintiff is asserting a claim against Ashburn and Milas, as explained infra, the Court finds that the claim is precluded for the same reasons as Plaintiff's other counts.

- Dr. Cummings' actions toward Plaintiff, which included inducing Plaintiff into an agreement with the intention of failing Plaintiff in his course, resulted in the intentional infliction of emotional distress (Count V), [id. ¶¶ 266–78];

- Defendants' breach of their duties to Plaintiff resulted in the negligent infliction of emotional distress because Plaintiff's academic record is "irrevocably and irreversibly tarnished" (Count VI), [id. ¶¶ 279–83];

- Babson breached its contract with Plaintiff, as set forth in Babson's Student Handbook, manuals, and other documents, by failing to adhere to the provisions in the Student Handbook, failing to provide a safe and non-discriminatory environment, retaliating against Plaintiff for opposing his peers' harassing behavior and disputing his failing grades, and failing to provide "effective interim measures to ensure that he would not be deprived of his education opportunities" (Count VII), [id. ¶¶ 284–91]; and

- Babson breached its common law duty of fairness (Count VIII), [id. ¶¶ 292–97].

Defendants moved to dismiss all claims on October 2, 2020.  [ECF No. 13].  Plaintiff opposed their motion on October 16, 2020.  [ECF No. 19].

## II.    LEGAL STANDARD

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept all well- pleaded facts as true, analyze those facts in the light most favorable to the plaintiff, and draw all reasonable factual inferences in favor of the plaintiff.  See Gilbert v. City of Chicopee, 915 F.3d 74, 76, 80 (1st Cir. 2019).  "[D]etailed factual allegations" are not required, but the complaint must set forth "more than labels and conclusions," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and must contain "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory," Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (internal quotations omitted) (citing Centro Médico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005)). The alleged facts must be sufficient to "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

"To cross the plausibility threshold a claim does not need to be probable, but it must give rise to more than a mere possibility of liability." Grajales v. P.R. Ports Auth., 682 F.3d 40, 44–45 (1st Cir. 2012) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "A determination of plausibility is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. at 44 (quoting Iqbal, 556 U.S. at 679).  When reviewing a motion to dismiss, the Court may consider documents outside of the pleadings, "'the authenticity of which are not disputed by the parties,' making narrow exceptions to the general rule 'for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint.'" Álvarez-Maurás v. Banco Popular of P.R., 919 F.3d 617, 622–23 (1st Cir. 2019) (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)).

Because Plaintiff is proceeding *pro se*, the Court holds his "pleadings to less demanding standards than those drafted by lawyers and endeavors, within reasonable limits, to guard against the loss of *pro se* claims due to technical defects." Santiago v. Action for Bos. Cmty. Dev., Inc., No 17-cv-12249, 2018 WL 5635014, at *2 (D. Mass. Oct. 31, 2018) (quoting Dutil v. Murphy, 550 F.3d 154, 158 (1st Cir. 2008)).  The Court also must generously construe the arguments in Plaintiff's briefing. Bahiakina v. U.S. Postal Serv., 102 F. Supp. 3d 369, 371 (D. Mass. 2015) ("[A] document filed *pro se* is to be liberally construed . . . ." (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007))).  However, a *pro se* litigant still must comply with procedural and substantive law. Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997).  Dismissal of a *pro se* complaint is appropriate when the complaint fails to state an actionable claim. Muller v. Bedford VA Admin. Hosp., No. 11-cv-10510, 2013 WL 702766, at *3 (D. Mass. Feb. 25, 2013) (citing Overton v. Torruella, 183 F. Supp. 2d 295, 303 (D. Mass. 2001)).

"Res judicata is an affirmative defense, but where, as here, the defendant[s] ha[ve] raised the question on a motion to dismiss, the plaintiff does not object to the procedure, and the court discerns no prejudice, the issue may be resolved on such a motion."  In re Sonus Networks, Inc. S'holder Derivative Litig., 499 F.3d 47, 56 (1st Cir. 2007) (internal citation omitted).  Here, where Plaintiff has had ample opportunity to argue against the applicability of res judicata, the Court discerns no prejudice from addressing res judicata on a motion to dismiss.  "Dismissal under res judicata, however, can only occur where the facts that establish the defense are conclusive and definitively ascertainable from 1) the allegations of the complaint, 2) the documents (if any) incorporated therein, 3) matters of public record and 4) other matters of which the court may take judicial notice."  United States v. Raytheon Co., 334 F. Supp. 3d 519, 523 (D. Mass 2018) (citing Colonial Mortgage Bankers, 324 F.3d at 16).

"Res judicata" is a broad term, encompassing both claim and issue preclusion.  Taylor v. Sturgell, 553 U.S. 880, 892 (2008).  In this case, Defendants' motion to dismiss is premised on claim preclusion, which "forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'"  Id. (citing New Hampshire v. Maine, 532 U.S. 742, 748 (2001)).  The doctrine serves two important functions: (1) "protecting litigants against gamesmanship and the added litigation costs of claim-splitting," and (2) "preventing scarce judicial resources from being squandered in unnecessary litigation." Airframe Sys., Inc. v. Raytheon Co., 601 F.3d 9, 14 (1st Cir. 2010).

"Federal law principles of res judicata govern the preclusive effect of a prior federal court's judgment on a subsequent action brought in federal court."  Apparel Art Int'l, Inc. v. Amertex Enter. Ltd., 48 F.3d 576, 582 (1st Cir. 1995); see also Mass. Sch. of L. at Andover, Inc. v. Am. Bar. Ass'n, 142 F.3d 26, 37 (1st Cir. 1998).  Under federal law, claim preclusion applies

when three factors are met: "(1) the earlier suit resulted in a final judgment on the merits, (2) the causes of action asserted in the earlier and later suits are sufficiently identical or related, and (3) the parties in the two suits are sufficiently identical or closely related." Airframe Sys., 601 F.3d at 14.

## III.    DISCUSSION

Defendants move to dismiss the amended complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6), asserting that all eight counts are barred by the doctrine of res judicata because Plaintiff "seeks to relitigate claims in this new action that were or could have been raised in [Patane I] against Babson in the same Court in 2017." [ECF No. 15 at 1]. Plaintiff responds that the amended complaint asserts new causes of actions based on facts and laws different from those at issue in Patane I, and that the issues raised in this lawsuit could not have been raised earlier due to the discovery of new facts since Patane I. [ECF No. 19 at 1, 5–6].

As discussed more fully below, the Court finds all three claim preclusion factors are met in this case.

### 1.    Final Judgment on the Merits

The prior action, Patane I, plainly satisfies the requirements of the first claim preclusion factor because Judge Stearns granted the defendants' motion for summary judgment on all claims and summary judgment is a final judgment on the merits. See Associated Gen. Contractors of Mass. v. Bos. Dist. Council of Carpenters, 642 F. Supp. 1435, 1439 (D. Mass. 1986) ("For *res judicata* purposes, summary judgment constitutes a final judgment on the merits."); see also Molina-Olivo v. Experience Works, Inc., No. 09-cv-01839, 2009 WL 4921861, at *2 (D.P.R. Dec. 10, 2009) ("[T]he court's order in [the previous action] was a final judgment on the merits because it was a summary judgment disposing of all claims.").

2.      Relatedness of the Causes of Actions

Defendants argue that the second factor is met because the claims in the Patane II amended complaint arise from the same common nucleus of operative facts addressed in Patane I—Plaintiff's participation in and dismissal from the MBA Program.  [ECF No. 15 at 9]. Plaintiff counters that the facts and arguments in Patane II differ from Patane I, that he is not disputing the legal issues already decided in Patane I, and that he could not have raised the Patane II claims earlier because he discovered certain underlying facts only after summary judgment was granted in Patane I.  [ECF No. 19 at 4–6].

The First Circuit "uses a transactional approach to determine whether the asserted causes of action are sufficiently identical or related for claim preclusion purposes."  Airframe Sys., 601 F.3d at 15.  In other words, claims are considered sufficiently related when they "derive from a common nucleus of operative facts."  Breneman v. United States ex rel. F.A.A., 381 F.3d 33, 38 (1st Cir. 2004) (quoting Gonzalez v. Banco Cent. Corp., 27 F.3d 751, 755 (1st Cir. 1994)); see also Silva v. City of New Bedford, 660 F.3d 76, 79 (1st Cir. 2011).  Indeed, "[a]dvancing a new theory of recovery or seeking a new remedy cannot overcome res judicata's bar if the claim grows out of the same transaction, occurrence or agreement upon which the previous claim was based."  Bos. Dist. Council of Carpenters, 642 F. Supp. at 1438.

This transactional approach to claim preclusion does not preclude claims based on how they are packaged and labeled, but instead looks to other considerations such as "whether the facts are related in time, space, origin or motivation," whether the two cases "'form a convenient trial unit' and whether treating them as a unit 'conforms to the parties' expectations.'"  Airframe Sys., 601 F.3d at 15 (quoting In re Iannochino, 242 F.3d 36, 46 (1st Cir. 2001)).  Thus, a claim may be precluded when either the same claim was brought in a prior case, or when the claim

could have been brought in the prior case.  Id. at 14 ("Federal claim preclusion law bars parties from relitigating claims that could have been made in an earlier suit, not just claims that were actually made.").

a. Underlying Factual Relationship

The underlying factual bases for the claims in Patane I and Patane II "are related in time, space, origin or motivation," see Silva, 660 F.3d at 79 (citing Airframe, 601 F.3d at 15), because both complaints challenge conduct that occurred during Plaintiff's participation in and dismissal from the MBA Program.  Most of the facts that form the basis for the claims in Patane II were previously alleged in the Patane I complaint.  See [Patane I Compl. ¶¶ 25–28, 43–48, 129, 140–53, 156–59 (Plaintiff's dismissal from the MBA Program)]; [id. ¶¶ 65–71, 73–83 (Plaintiff's team conflicts)]; [id. ¶¶ 88, 97–125 (Plaintiff's grade dispute regarding his "F" in Dr. Cummings' course)]; [id. ¶¶ 13–21, 89–96 (Plaintiff's placement on academic probation and subsequent reinstatement)].  Although Plaintiff alleges facts in his Patane II amended complaint that were not alleged in Patane I, these "additional allegations in [his] complaint . . . do not affect the identicality of the underlying transaction for both complaints."  Silva, 660 F.3d at 80. Plaintiff's Patane II claims and their underlying facts all arise from his experience in and dismissal from Babson's MBA Program, and all of the relevant facts alleged in Patane II occurred prior to May 2017, which was before Patane I was even filed.  Contra Gladu v. Correct Care Sols., No. 17-cv-00504, 2019 WL 5423019, at *10 (D. Me. Oct. 23, 2019) (finding claims did not arise from the same transaction when facts alleged in subsequent complaint occurred after the prior action).

The motivation behind Patane I and Patane II is also identical because both complaints seek redress for the "arbitrary, unfair, wrongful and unlawful decision to dismiss" Plaintiff in

16

May 2017, compare [Patane I Compl. ¶ 1], with [Am. Compl. ¶ 1], and both complaints seek his reinstatement into the MBA Program, see Swaida v. Gentiva Health Servs., 238 F. Supp. 2d 325, 328–29 (D. Mass. 2002) (finding factual basis "related in time, space, origin and motivation" where both suits stemmed from the plaintiff's allegedly unlawful termination and sought redress for that termination even though the prior suit argued the termination was due to cooperation with a Labor Department investigation and the subsequent suit alleged age discrimination).

> b.      Convenient Trial Unit

Because none of the claims asserted in either suit have proceeded to trial, the Court "must make an informed prophecy as to what witnesses would have appeared and what proof would have emerged had the two cases been tried." Mass. Sch. of L, 142 F.3d at 38.  Given the similar facts underlying each cause of action, the Court finds that testimony from the same witnesses, including Plaintiff's professors, fellow students, and other Babson personnel, would have been necessary to resolve both cases.  Further, similar documents, such as correspondence related to Plaintiff's dismissal and performance in the MBA Program and the Babson Student Handbook, would also be relevant to the resolution of the claims in both cases.  Accordingly, the Court finds that the claims asserted in Patane I and Patane II would have formed a convenient trial unit.

> c.      Expectations of the Parties

In assessing relatedness of the causes of action, the Court also considers whether treating the claims asserted in Patane I and Patane II as a unit "would conform to the parties' expectations," see In re Iannochino, 242 F.3d at 46.  To assess the parties' expectations, the Court is "guided by the principle that, where two claims arose in the same time frame out of similar facts, one would reasonably expect them to be brought together." Id. (internal quotations omitted).  All of the factual allegations and complained-of conduct in the Patane II amended

complaint took place prior to the date that Patane I was filed, which weighs in favor of finding that the parties would have reasonably expected them to be brought together.

The parties' litigation expectations are also assessed by looking to whether the parties knew of the underlying facts at the time of the first suit. Esteras v. San Juan Bautista Med. Ctr., Inc., 722 F. Supp. 2d 141, 149 (D.P.R. 2009) (citing In re Iannochino, 242 F.3d at 48). Plaintiff contends that at the time of Patane I, he "was not aware of underlying fact[s] which he discovered only later after [Patane I]. Plaintiff perceived that he was being victimized and that . . . all Parties in this lawsuit were acting unfairly, however he had not enough evidence to prove that Defendants['] wrongdoing was not only an assumption but true and tangible." [ECF No. 19 at 5–6]. Plaintiff, however, provides no detail to support this conclusion and fails to identify specific facts that were discovered after Patane I or occurred after May 2017. See [id.]. Although claim preclusion does not apply where the evidence on which the second action is based was "not reasonably discoverable during the pendency of the first action," Salvati v. Fireman's Fund Ins. Co., 368 F. Supp. 3d 85, 92 (D. Mass. 2019), Plaintiff has not explained why any new facts were not reasonably discoverable during the first litigation, in which Plaintiff also challenged the conduct leading up to his dismissal from the MBA Program.

After weighing these considerations, the Court finds that the second claim preclusion factor, relatedness of the causes of action, is satisfied in this case because Plaintiff's claims in Patane I and Patane II "derive from a common nucleus of operative facts," Breneman, 381 F.3d at 38 (citing Gonzalez, 27 F.3d at 755).

3.      Relatedness of Parties

Defendants argue that the third factor is met because Babson was a named defendant in

Patane I and Dr. Potter, Dr. Cummings, and Ms. Hose, are sufficiently "closely related" to

Babson as members of its faculty and staff.  [ECF No. 15 at 10].

To satisfy the third claim preclusion factor, the parties in both suits must be sufficiently

related, though this factor "does not require privity between parties in the two suits."  Silva, 660

F.3d at 80 (citing Airframe Sys., 601 F.3d at 17.  Claims against defendants who are not named

in a prior suit may still be barred where "the new defendant is 'closely related to a defendant

from the original action.'"  Airframe Sys., 601 F.3d at 17 (quoting Negrón-Fuentes v. UPS

Supply Chain Sols., 532 F.3d 1, 10 (1st Cir. 2008)).  Indeed, for the doctrine to be fully effective,

the "preclusive effects occasionally can reach persons who, technically, were not parties to the

original action."  Gonzalez, 27 F.3d at 757.

Where an employer is a defendant in the first case, and employees acting within the scope

of their employment are defendants in the subsequent case, the employee-defendants are

"sufficiently closely related for purposes of claim preclusion."  Silva, 660 F.3d at 80; see also

Steele v. Ricigliano, 789 F. Supp. 2d 245, 249 (D. Mass. 2011) (finding a sufficiently close

relationship between parties where the defendants added in the subsequent case were "directors,

managers, employees or affiliates of or acting in concert with the defendants named in [the prior

case]"); cf. In re El San Juan Hotel Corp., 841 F.2d 6, 10–11 (1st Cir. 1988) (concluding there

was a significant relationship where the original defendant and new defendant were

co-perpetrators of the joint harms at issue in both cases).

Patane was the plaintiff in both actions.  As to Defendants, Babson was named as a

defendant in Patane I, thus this factor is clearly satisfied as to Babson.  While Dr. Potter,

Dr. Cummings, and Ms. Hose were not named defendants in <u>Patane I</u>, they were faculty and administrators at Babson and have a sufficiently close relationship with the prior defendants. <u>See</u> <u>Steele</u>, 789 F. Supp. 2d at 249.  Further, these three new defendants acted together with the defendants in <u>Patane I</u> to effectuate Plaintiff's dismissal from Babson.  <u>See</u> <u>In re El San Juan Hotel Corp.</u>, 841 F.2d at 10–11.  Plaintiff has failed to demonstrate why it was not possible to add these three defendants to <u>Patane I</u>, and the Court finds no unfairness to Plaintiff in its decision.  <u>See</u> <u>Airframe Sys.</u>, 601 F.3d at 18 (considering unfairness to party when subsequent suit was brought against new defendant).  Any unfairness to Plaintiff is substantially lessened for Dr. Cummings and Ms. Hose in particular because those defendants were identified in Plaintiff's original complaint in <u>Patane I</u>, despite not being named as defendants.  <u>See, e.g.</u>, [<u>Patane I</u> Compl. ¶¶ 105–13 (Dr. Cummings), 128, 140, 144 (Ms. Hose)].

"[Plaintiff] has provided no compelling reason for his failure to [bring the current claims in the initial proceeding] and, as such, the Court finds that he should be precluded from raising such claims in a separate lawsuit."  <u>Steele</u>, 789 F. Supp. 2d at 248–49.  Finding all factors required for claim preclusion are satisfied, Plaintiff's claims are precluded, and the Court grants Defendants' motion to dismiss for failure to state a claim.[5]

---

[5] Because the amended complaint is dismissed pursuant to Rule 12(b)(6), the Court does not need to reach Defendants' alternative ground for dismissal based on improper service pursuant to Federal Rule of Civil Procedure 12(b)(5).  <u>See</u> <u>DaCruz-Crossely v. U.S. Bank Nat'l Ass'n</u>, 926 F. Supp. 2d 405, 407 (D. Mass. 2013) ("[The court] need not address Defendant's alternative grounds for dismissal").  Although the Court declines to address this argument in any depth, it does appear that service was improper under Federal Rule of Civil Procedure 4 and that this would be an alternative ground for dismissal.  More specifically, contrary to the dictates of the Rule, Plaintiff initially attempted to serve Dr. Potter and Ms. Hose at their place of employment, <u>see</u> <u>Campbell v. Isolations Techs., Inc.</u>, No. 04-cv-40236, 2005 WL 8176500, at *1 (D. Mass. Sept. 23, 2005), and Plaintiff's subsequent attempts at service did not serve the summons and only served the complaint, <u>see</u> Fed. R. Civ. P. 4(c) ("A summons must be served with a copy of the complaint.").

**IV.    CONCLUSION**

For the reasons stated above, Defendants' motion to dismiss, [ECF No. 13], is

GRANTED.

**SO ORDERED.**

May 18, 2021                                    /s/ Allison D. Burroughs
                                                ALLISON D. BURROUGHS
                                                U.S. DISTRICT JUDGE